### (June 18, 1959)

In the Matter of SUTTON-53RD CORP., Respondent, against TAX COMMISSION OF THE CITY OF NEW YORK, Appellant.

APPEAL from an order of the Supreme Court at Special Term, entered March 31, 1958, which reduced the assessed valuation of real property of petitioner at 60 Sutton Place, South, in the City of New York for the tax year 1952-53.

Order appealed from affirmed, with $20 costs and disbursements to the respondents.

RABIN, J. (dissenting). I dissent and would reverse the order of the Special Term which granted respondent tax exemption on a building (in course of construction) for the tax year 1952-53. The exemption was allowed on the ground that there had been no construction, as contemplated by the statute (Administrative Code of City of New York, § 157-1.0) prior to January 25, 1951. That is the significant date in this case, for if construction was started prior thereto, the exemption was improper.

The sole question therefore is whether what was done by respondent in advancement of the project, prior to January 25, 1951, amounted to the commencement of construction. More precisely, the issue is whether the pouring of concrete into 98 holes that had been blasted out during the course of excavation, was, as is urged by respondent, merely a sealing process to protect the exposed rock, or whether, as contended by the Tax Commission, it was more than that and amounted to the beginning of construction.

Respondent asserts that the concrete poured merely created "pads" to cover over the exposed rock. Appellant, on the other hand, says that they were "foundation piers or footings" which were created to distribute the building load. The issue, however, cannot be resolved on the basis of the name employed by either party to describe the nature of the operation. It can only be determined by a realistic interpretation of the functional effect of the work performed. In other words did the work which was done prior to January 25, 1951 constitute a step, or steps, in the actual construction of the building?

There is no real dispute as to what was done prior to that date. After a large number of excavations had been made — down to the base rock so as to obtain proper support for the building — concrete was poured into the resulting bores or holes. The excavations were about 5 or 6 feet square and ranged in depth from 18 inches to 6 feet. The concrete poured into each varied from 1 to 10 cubic yards, depending upon the depth of the excavation.

In *People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Purdy* (216 N. Y. 704, revg. 167 App. Div. 637) the Court of Appeals reversed a determination of this court and held that the petitioner there was entitled to tax exemption on a building in the course of construction. The reversal was based upon the dissenting opinion written by Judge SCOTT of this court, in which he stated the fundamental principles which, for tax assessment purposes, should guide in determining when building construction has actually been commenced. Both sides rely on that case and appear to accept the principles therein enunciated. It was Judge SCOTT's view that mere excavation to prepare the land for the building does not amount to construction which would subject the property to assessment. However, it is also quite clear from his opinion that the laying of foundations prior to the tax status date, would subject the property to assessment. In that case, the crucial date

was October 1, 1912. Judge Scott pointed to the fact that prior to October 1, 1912 no construction work had been done, observing that the first work, other than excavation, did not begin until " on or about November 15, 1912, *when concrete was placed for the grilling foundations* designed to support the columns of the hotel building " (p. 643) (emphasis supplied).

On the facts in the case before us, it seems clear that this preliminary concrete work created foundations which ultimately became part of the completed structure. What was done here was not something purely temporary, as for instance would be the situation in the case of shoring. The work done in the present case was quite comparable to that in the *New York Central* case (*supra*), the only difference in the two cases being that there the foundation work was not commenced until subsequent to the tax status date. Consequently, construction, we think, must be deemed to have commenced when the foundations were laid, which concededly was at a time prior to January 25, 1951 (*People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Purdy, supra*; *People ex rel. Shelton Holding Corp.* v. *Goldfogle,* 220 App. Div. 451).

In the *Shelton* case this court held that the erection of concrete footings or piers on which a buildiing subsequently rested, constituted the commencement of construction. Respondent attempts to distinguish that case by the fact that in some of the foundation heads there had been placed grillage which would later receive the steel columns. That was not the decisive factor there. The decisive factor which led the court to hold that construction had commenced was the erection itself — in accordance with the proposed plans and specifications — of the " concrete footings or piers." However, in the type of construction employed in the present case there was no occasion for the placing of grillage in any of the foundation heads. This building was constructed entirely of concrete and the concrete pourings, perforce, became an integral part of the structure.

Moreover, even assuming, as claimed, that the purpose of the concrete pouring was to seal off the rock (allegedly a city requirement), if in fact, the result was to create foundations or piers for the support of the building, then the concrete pouring must be considered as commencement of construction (*People ex rel. Shelton Holding Corp.* v. *Goldfogle, supra*). It was there said (p. 453): " It seems to us that with respect to these footings at least, construction had commenced prior to October 1, 1922. That which was a compliance with the order of the board of health was also a commencement of construction of the building."

The evidence in the record before us indicates that although the concrete may have been poured with the initial purpose of sealing off the rock, it nevertheless was done with the added design of creating foundations on which the building would be erected. Since these foundations were constructed prior to January 25, 1951, respondent was not entitled to exemption from a tax assessment on the building.

The final order appealed from should be reversed on the law and on the facts and the petition dismissed, with costs to appellant.

M. M. Frank, McNally and Stevens, JJ., concur in decision; Rabin, J., dissents and votes to reverse in opinion, in which Breitel, J. P., concurs.

Order appealed from affirmed, with $20 costs and disbursements to the respondent.